**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-60191-CV-MIDDLEBROOKS

ROBERT L. STRAUSS, P.A.,

      Plaintiff,

v.

GEMINI INSURANCE COMPANY, and
D.L.S. PRESTRESSED, INC.,

      Defendants.

_____/

**<u>ORDER ON MOTION TO DISMISS</u>**

THIS CAUSE is before the Court on Defendant Gemini Insurance Company's Motion to Dismiss. (DE 5). The Matter is ripe for my consideration. (DE 10; DE 13). For the following reasons, I am going to grant the Motion and dismiss the case with prejudice.

**I.      Background[1]**

On February 2, 2024, Federal Insurance Company ("Federal") filed a lawsuit on behalf of Kevin Brown and Jessica Brown in the 17th Judicial Circuit, in and for Broward County, Florida. (DE 1-3). The Second Amended Complaint in that action seeks $30,000.00 in monetary damages against six Florida corporations, including Robert L. Strauss, P.A. ("Strauss"), and DLS Prestressed, Inc. ("DLS").

---

[1] Because this cause comes before the Court on a motion to dismiss, I accept all facts in the Plaintiff's well-pleaded complaint as true and construe them in the light most favorable to the Plaintiff. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, I will favor the Plaintiff with all reasonable inferences from the allegations in the Complaint. *See Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

Federal alleges that Strauss is a general contractor that was hired to construct a single-family home in Lighthouse Point, Florida. (DE 1-3 ¶ 10). On September 20, 2020, Strauss subcontracted to DLS the job of excavating and installing auger-case, underground, concrete piles at the home. (*Id.* ¶ 11).  According to Federal, DLS ended up breaking one or more sewer pipes while performing the construction services. (*Id.* ¶ 17). The result was a backup of the normal flow of sewage, resulting in extensive property damage. (*Id.* ¶ 18). Ultimately, Kevin and Jessica Brown, who were living at a residence along the same main sewer line, received $578,279.44 from Federal, their insurance provider at the time. (*Id.*). In turn, Federal initiated a state court lawsuit against all the subcontractors who performed construction work on the house, including DLS, as well as general contractor Strauss. (*See generally id.*).

Thereafter, Strauss initiated a state-law complaint against both DLS, the subcontractor who performed the excavation work, and Gemini Insurance Company, Inc. ("Gemini"). Gemini provides insurance for DLS under a general liability insurance Policy, # VNGP001532. (*Id.* ¶ 16). In the Complaint, Strauss alleges that it is also covered under the insurance Policy as a defined "additional insured." (*Id.* ¶ 9). Accordingly, Strauss claims that the Policy between DLS and Gemini "provides coverage for any and all losses or damages attributable to Strauss as a result of the work performed by DLS at the [family residence in Lighthouse Point, Florida]." (*Id.* ¶ 22). In Count I of the Complaint, Strauss seeks a declaration pursuant to Fla. Stat. § 86.011 with regard to its rights under the insurance policy between Gemini and DLS, in which DLS is sole Named Insured. (*Id.* ¶ 26) (DE 1-4 at 2). Count II is against Gemini only, and there, Strauss alleges that Gemini breached the implied covenant of good faith and fair dealing when it denied coverage to Strauss and failed to agree to pay any sums for damages that are assessed against Strauss. (*Id.* ¶ 31).

Gemini removed Strauss's state-law Complaint to this Court on February 2, 2024, invoking the Court's diversity jurisdiction. (DE 1). Within the Notice of Removal, Gemini identified that Strauss is a Florida professional association whose sole member is Robert L. Strauss. (*Id.* ¶ 11). Robert L. Strauss is domiciled in Florida. (*Id.*). It also identified its own citizenship as that of Delaware and Arizona. (*Id.* ¶ 10). Gemini then conceded that DLS is "a Florida corporation with its principal place of business in Broward County." (*Id.* ¶ 12). However, it alleged that DLS is "merely a nominal defendant" whose citizenship should be disregarded for purposes of evaluating diversity jurisdiction. (*Id.* ¶ 13). Gemini argued that "[t]o the extent DLS is a proper defendant, which Gemini denies, it should be realigned as having a common interest with Strauss." (*Id.* ¶ 14). Thus, it maintained within the Notice of Removal that this Court has subject matter jurisdiction because there is complete diversity between the only interested and proper Parties, Plaintiff Strauss and Defendant Gemini. At the time of removal, Defendant DLS had not been served with the state court complaint.

Eleven days after Gemini removed Strauss's Complaint from state court, it moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. (DE 5). Within the Motion, it argues that the unambiguous, clear language of the policy between Gemini and DLS precludes a declaratory judgment in Strauss's favor. In support, Gemini cites that not only was there never a fully executed contract between Strauss and DLS to include Strauss as an additional insured under DLS's Policy, but also Federal did not sue Strauss for vicarious liability over DLS's actions in the Underlying Action. Because these are the two conditions for qualification as an "additional insured" under the Policy, Count I should be dismissed with prejudice. Finally, Gemini argues that Count II is noncognizable under Florida law, or, in the alternative, is premature as the issue of ultimate liability in the underlying state court property damage lawsuit is yet to be decided.

Strauss responded to the Motion to Dismiss on February 27, 2024. (DE 10). In that Response, Strauss first argues that the Court does not have subject matter jurisdiction because the Parties are not completely diverse. [2] Second, Strauss argues that it has pleaded sufficient facts demonstrating that it qualifies as an "additional insured" under the Policy. Third, Strauss concedes that it has not complied with a condition precedent in bringing his breach of the implied covenant claim, acknowledging that the claim should be dismissed, albeit without prejudice. Gemini filed a Reply in support of its Motion to Dismiss on March 12, 2024. (DE 13).

While briefing of Gemini's Motion to Dismiss was underway, Strauss served DLS with the summons and Complaint.[3] (DE 28). DLS also filed a Motion to Dismiss the Complaint. (DE 41).[4] This Motion is not yet ripe, and I do not consider it when evaluating the merits of Gemini's Motion to Dismiss.

---

[2] I note that Strauss has still never filed a separate motion for remand, which would have been the proper procedural posture to raise any issue regarding the Court's subject matter jurisdiction and would have allowed for more developed briefing from the Parties on the matter.

[3] DLS never responded to the Complaint. On May 8, 2024, Strauss moved for Clerk's entry of default as to DLS (DE 29), which was granted that same day (DE 30), and I ordered Strauss to move for final default judgment against DLS by May 24, 2024 (DE 31). Before Strauss ever moved for default judgment against DLS, an attorney entered an appearance on behalf of DLS (DE 33) and moved to vacate the clerk's entry of default (DE 34). Despite my finding that DLS had not articulated a persuasive reason for defaulting in this matter, I granted the motion to vacate in the interest of deciding the case on the merits. (DE 39).

[4] In support of dismissal, DLS appears to argue that the Complaint is a shotgun pleading where Strauss has lumped various claims against all the Defendants together. DLS further argues that Strauss is "impermissibly attempting to split a single cause of action." (DE 41 at 4). Because "the doctrine of claim splitting bars a plaintiff from initiating two different suits in different fora relating to the same transaction or occurrence," and because Federal has initiated a lawsuit where Strauss could raise this claim, the doctrine of claim splitting would preclude this relief. (*Id.*).

## II.    Discussion

Although the matter was never properly briefed or presented, I deem it necessary to consider whether I do, in fact, have subject matter jurisdiction over this action. *See DeRoy v. Carnival Corp.,* 963 F.3d 1302, 1311 (11th Cir. 2020) ("Federal courts have an obligation to examine sua sponte their own jurisdiction over a case, notwithstanding the contentions of the parties.") (citation omitted). Because the Parties are not completely diverse from each other, I must remand this case unless "the facts and substance of the claims alleged, not the jurisdictional labels attached, . . . ultimately determine [that I] can hear [the] claim." *Id.* (citation omitted).  Only once I find subject matter jurisdiction in this case can I turn to the merits of Gemini's Motion and consider if Strauss has pleaded a plausible claim upon which relief can be granted.

### A.  Fraudulent Joinder.

A defendant may remove an action filed in state court by invoking diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). Critically, "[d]iversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 (11th Cir. 1998). If "one of the defendants is a citizen of the state in which the suit is filed," then the case must be remanded back to state court. *Stillwell v. Allstate Ins. Co*., 663 F.3d 1329, 1332 (11th Cir. 2011). Such a remand can occur sua sponte because it implicates the court's authority to hear a case. *See Whole Health Chiropractic & Wellness, Inc. v. Humana Med. Plan, Inc.,* 254 F.3d 1317, 1319 (11th Cir. 2001) ("[Section] 1447(c) does not authorize *any sua sponte* remand order not based on subject matter jurisdiction."). But "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction," the plaintiff has engaged in "fraudulent joinder," and the court still has the

jurisdictional authority to determine the merits of the case. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The burden of proving fraudulent joinder rests with the defendant seeking removal. *See id.* To meet its burden of establishing fraudulent joinder, and to remain in federal court despite the presence of a nondiverse defendant, a codefendant must show either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently [pleaded] jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The Eleventh Circuit has described the codefendant's burden as a "heavy one," wherein "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Id.* The Eleventh Circuit has stated that when a court is confronted with the possibility of remand, "[i]f there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (emphasis added).

In this instance, Gemini has asserted that removal is appropriate because Strauss's Complaint cannot possibly assert a cause of action against resident Defendant DLS, who all Parties concede is a Florida corporation. Strauss argues, albeit in a summary response to a Motion to Dismiss, that "DLS has filed numerous pleadings in the Underlying Action [brought by Federal on behalf of the Browns], most recently filing a cross-claim against [Strauss] for Breach of Contract, Negligence and Contractual Indemnity." (DE 10 at 3–4). It further argues that "DLS is a necessary and indispensable party to this action because DLS was the party that entered into the written contract with [Strauss] as evidence[d] by its own admissions in its cross-claim against

[Strauss] (*see* DE 10-2 ¶ 9) and provided the certificate of insurance evidencing [Strauss's] status as an additional insured." (DE 10 at 4).

I disagree that DLS is a necessary party to this lawsuit. Strauss has essentially brought a claim seeking a judicial declaration of Gemini's duties to defend Strauss and/or indemnify Struass for the claims in the Underlying Action by Federal. Although DLS is the named insured under the Policy pursuant to which Strauss claims coverage, there are no allegations against DLS in the Complaint, and there are no allegations that *DLS* has any obligations to Strauss pursuant to the Policy. In fact, a review of Florida insurance law involving lawsuits between an "additional insured" and an insurance company fails to demonstrate that the outcome of the determination impacts the named insured at all. *See e.g.*, *Garcia v. Fed. Ins. Co*., 969 So. 2d 288, 290 (Fla. 2007); *Florida Power & Light Co. v. Penn America Ins. Co.*, 654 So.2d 276 (4th DCA 1995). Neither Party has directed the Court's attention to a case that provides otherwise.

I note that *even if* DLS is more than a nominal party to this lawsuit, at the very least, its interests are aligned with that of Strauss's. It is true that the definition of "additional insured" on DLS's Policy with Gemini would require that, should I find Strauss qualifies for coverage, I necessarily believe there to be a written and executed contract between Strauss and DLS. Ostensibly, such a finding could impact DLS's obligations and rights. But "federal courts are required to realign the parties in an action to reflect their interests in the litigation." *City of Vestavia Hills v. Gen. Fid. Ins. Co*., 676 F.3d 1310, 1313 (11th Cir. 2012). With regard to insurance law, "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party." *Id.* (quoting *Home Insurance Co. of Illinois v. Advo Oil*

*Co.*, 154 F.3d 739, 741 (7th Cir. 1998)).[5] Both Strauss, as the general contractor, and DLS, as the subcontractor, would fall on the same side of the case: they both argue that they are covered—and thus Gemini would have to both indemnify and defend them in the Underlying Action—pursuant to the same insurance policy. This does not require me to weigh in on whether Strauss or DLS were actually negligent when constructing the Lighthouse Point, Florida, home and damaging the Browns' property. *See Weller v. Navigator Marine, Inc.,* 737 F.2d 1547, 1549 (11th Cir. 1984) (holding that the court must realign parties when their positions are substantially identical in the suit before the court, regardless of if their interests are in opposition outside the issues raised in the subject action). Rather, for purposes of this federal declaratory judgment action, Strauss is seeking relief from Gemini on the exact same basis that DLS would be seeking relief.

Accordingly, I find that Defendant's heavy burden has been met. Because I "can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable" to DLS, *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017), I find that DLS is a mere nominal party to this lawsuit. *Cf. Coastal Constr. of S. Florida v. Admiral Ins. Co*., No. 07-21847-CIV, 2009 WL 10692652, at *7 (S.D. Fla. Mar. 2, 2009) (finding that a named insured was not a necessary party to litigation between a party claiming to be an additional insured and the insurance company under Rule 19(a) of the Federal

---

[5] It is true that this is a suit, initiated by Strauss in state court, for *coverage* as opposed to *noncoverage*. It seems that the Eleventh Circuit characterized parties' interests this way because the bulk of declaratory judgment actions filed in federal court as an original matter are brought by insurance companies seeking a judgment regarding their duty to *not* defend or indemnify a party. *See e.g.*, *N. Am. Specialty Ins. Co. v. Bull River Marina, LLC*, 709 Fed. Appx. 623, 627 (11th Cir. 2017). However, the reasoning of the *Advo Oil Co.* panel holds true regardless of the party initiating the federal declaratory judgment lawsuit. Gemini would only argue that the two entities, DLS and Strauss, are not covered under the policy, and the other two could only argue that they are covered.

Rules of Civil Procedure because the issue of coverage did not require "a finding of liability by [the named insured.]"). Thus, complete diversity exists, and I can evaluate the merits of the Motion to Dismiss.

### B. Plausible Claim to Relief

Strauss alleges that it is entitled to a finding from this Court that:

> Gemini Insurance Company has a duty and obligation *to provide coverage* for the loss or damage caused by its insured DLS Prestressed, Inc., such loss or damage which may be attributable to [Strauss], and whether *such loss or damage* must be paid to Plaintiff as a loss payee, and therefore, enter a judgment against [Gemini] for any and all damages resulting from the Complaint brought by Plaintiff Federal Insurance Company a/s/o Kevin Brown and Jessica Brown.

(DE 1-3 at 9) (emphasis added). Gemini, as part of its Notice of Removal, attaches the Policy between it and DLS. (DE 1-3). Whether or not Gemini has a duty and obligation to provide coverage under the Policy is essentially a question of whether Gemini should either indemnify Strauss or defend Strauss in the Underlying Action. As discussed below, this is ultimately a matter of whether Strauss qualifies as a defined "additional insured."

In support of the Motion to Dismiss, Gemini highlights that the insurance Policy provides two "additional insured" endorsements. (*See* DE 1-3 at 10, 39). These endorsements provide additional coverage to a third party so long as two conditions are met: (1) there is an enforceable contract between the named insured (i.e. DLS) and the organization claiming to be an additional insured (i.e. Strauss); and (2) the underlying claimed liability is caused, "in whole or in part" by the named insured, DLS. (*Id.*). Gemini contends that Strauss has not alleged and cannot allege that these two, conjunctive requirements are met. Thus, according to Gemini, Strauss's Complaint fails to contain sufficient factual matter, accepted as true, that "state[s] a claim to relief that is plausible

on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Of course, Strauss disputes this argument: it responds that not only is there a written and enforceable contract between it and DLS, which DLS has conceded, but also that the allegations in Federal's Underlying state court property damage Action denote that Federal seeks to hold Strauss liable, in whole or in part, for damages that were caused by the acts or omissions of DLS. Thus, it argues that the two conjunctive requirements are met, and it is entitled to coverage under the plain terms of the policy.

The Parties' respective arguments raise a few issues necessary to determine whether Gemini owes a duty to Strauss, and whether dismissal is appropriate as a matter of law. First, has Strauss even presented a justiciable issue for my determination? Second, if it has, can I consider the insurance Policy between DLS and Gemini, as well as the facts of the Underlying Action, when evaluating whether Strauss has pleaded facts that demonstrate it would be covered under the insurance Policy?

In light of the facts and documents that I may properly consider on a motion to dismiss, my inquiry would turn to whether Strauss plausibly qualifies as an "additional insured" under the Policy. To make that determination, I must ask if there a written and executed contract between DLS and Strauss requiring DLS to add Strauss to its insurance Policy as an "additional insured." And finally, regardless of the existence of a contract, I must determine if Strauss's putative liability in the Underlying Action would be caused in whole or in part by DLS's liability. I answer each question in turn to ultimately conclude that Strauss has failed to establish a plausible claim for relief.

(1) **Ripeness under the Declaratory Judgment Act**

For a court to issue a declaratory judgment under Florida Statute § 86.011, there must be a "bona fide dispute between the parties, [a finding] that the plaintiff[] ha[s] a justiciable question as to the existence or non-existence of some right, . . . [and] a bona fide, actual, present need for the declaration." *State Farm Mut. Auto. Ins. Co. v. Wallace*, 209 So. 2d 719, 721 (Fla. Dist. Ct. App. 1968) (citations omitted). A complaint cannot state a cause of action for declaratory relief if it "fails to contain allegations as to doubt or need for construction of a policy or for a determination of its validity." *Id.* (citation omitted).

A plain reading of Count I ostensibly suggests that this matter is not yet ripe for a declaratory judgment by this Court. For example, Count I is labeled, "Declaratory Judgment for Indemnity." (DE 1 at 8). Further, Strauss maintains in paragraph 23 of the Complaint, which is located under Count I, that it "filed this instant action seeking a determination whether the policy between Gemini and DLS provides coverage to Strauss *for any such damages* when Strauss is named as an additional named insured on the policy." (*Id.* ¶ 23). But the duty to indemnify, or to pay, only arises once liability in an underlying lawsuit is determined. *See Home Ins. Co. v. Gephart,* 639 So. 2d 179, 180 (Fla. Dist. Ct. App. 1994). That is because the duty to indemnify is narrow; it is triggered "by the underlying facts adduced at trial or developed through discovery during the litigation." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1324 (11th Cir. 2014). No determination as to Strauss's liability has been reached in the Underlying Action brought by Federal against Strauss and DLS, and so Florida law would suggest that this action should be dismissed as premature because there is not yet need for construction of the insurance policy.

But Strauss also appears to be raising the issue of Gemini's duty to defend, which is a separate and distinct concept. In Florida, an insurance company has no duty to defend in a lawsuit

absent "a statutory or contractual duty." *Allstate Ins. Co. v. RJT Enterprises, Inc.*, 692 So.2d 142, 144 (Fla. 1997). But, where it exists, the duty to defend "encompasses responsibilities beyond the coverage limits. Indeed, the cost of providing a defense may exceed the amount paid to indemnify." *Id.* at 144–145. When the duty to defend arises depends "solely upon the allegations in the complaint." *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So. 2d 419, 421 (Fla. Dist. Ct. App. 1995). "If the complaint, fairly read, alleges facts which create potential coverage under the policy, the insurer must defend the lawsuit." *See id.* (citations omitted).

Although Count I of Strauss's Complaint is titled the duty to "indemnify," I construe it as seeking a declaratory judgment as to Gemini's duties to both indemnify Strauss and defend Strauss in the Underlying Action. The insurance policy between Gemini and DLS states that "[Gemini] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. [Gemini] will have the right *and duty to defend* the insured against any 'suit' seeking those damages . . . ." (DE 5 at 5) (emphasis added). Further, in the first paragraph of the Complaint, Strauss states that "[t]his is an action seeking declaratory relief . . . against Gemini Insurance Company . . . for the purpose of determining an actual and present controversy between the parties as to the scope of Gemini's obligations to defend and/or indemnify Strauss against claims, and a resultant lawsuit." (DE 1-3 ¶ 1). Although it is true that this allegation does not appear connected to Count I (titled "Indemnity"), a Court can consider well-pleaded allegations wholistically on a Motion to Dismiss. Thus, although the duty to indemnify is not ripe, I will analyze whether Strauss's Complaint states a viable claim based upon Gemini's alleged duty to defend. *See Higgins v. State Farm Fire & Cas. Co.,* 894 So. 2d 5, 9 (Fla. 2004) (holding that a declaratory judgment can issue before underlying liability is determined when the parties seek a declaration as to the insurance agency's duty to defend and indemnify the

insured).  Therefore, I will turn to an evaluation of which facts and documents I can consider in reaching the merits of Gemini's Motion.

(2) **Extrinsic Evidence**

Both Parties either attach or reference documents or facts within the Motion or response briefs that appear outside of the four corners of Strauss's Complaint. However, I note that neither side acknowledges this or briefs the issue of whether I can or should consider extrinsic evidence in ruling on this Motion to Dismiss.

Ordinarily, a court is limited to considering only the claims in the four corners of the complaint, including any attachments thereto, when ruling on a motion to dismiss. But under the "incorporation by reference" exception, a court may consider extrinsic documents that are attached to a motion to dismiss if those documents are essential to the plaintiff's claim and if the authenticity of the extrinsic documents is not disputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Otherwise, consideration of extrinsic documents requires the court to convert a motion to dismiss into a motion for summary judgment. The other way that a court can consider extrinsic evidence is by taking judicial notice of "adjudicative facts." Under Federal Rule of Evidence 201, this category of facts is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(a). Only when such a fact is "outside the area of reasonable controversy," can a court label it "adjudicative" and consider it as evidence during any stage of the proceeding. Fed. R. Evid. 201(a) (Advisory Committee notes). But because "the effect of taking judicial notice . . . is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549,

1553 (11th Cir. 1994). Accordingly, "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). In sum, a court considers extrinsic evidence outside the four corners of the plaintiff's complaint when ruling on a motion to dismiss in a few narrow contexts.

In this instance, I find it appropriate to consider DLS's Policy with Gemini under the incorporation by reference exception. Although no part of the Policy is attached or quoted within Strauss's Complaint, I find it is essential to Strauss's claim. Strauss seeks a declaration that it is covered under this Policy, which would mean that Gemini has the duty to both indemnify and defend it in the Underlying Lawsuit. To determine that matter, even without accounting for Gemini's defenses, it is necessary for me to consider the content of the Policy itself.

In contrast, it is inappropriate to take judicial notice of the fact that DLS has "conceded to the existence of a contract in its cross-claim filed against [Strauss] in the Underlying Action." (DE 10 at 6). Although I can judicially notice the *fact that DLS filed a crossclaim*, I cannot conclude from such a crossclaim that a contract exists as a matter of law, nor can I conclude anything about DLS's state of mind regarding such a contract. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing *FDIC v. O'Flahaven*, 857 F.Supp.154, 157–58 (D.N.H. 1994) (holding that the "court could not judicially notice veracity of allegations in affidavits from state court case, rather it could only take notice that the affidavits were filed, *and the averments were made*.")). Using DLS's pleadings in a different, state court action to conclude, in this federal declaratory judgment action, that there is a valid contract to obtain insurance between Strauss and DLS would belie the purpose of Federal Rule of Evidence 201. The existence of a contract between Strauss and DLS for DLS to add Strauss as an "additional insured" under DLS's insurance Policy with Gemini is a quintessential nonadjudicative fact—Gemini dedicates the bulk of its Motion to

Dismiss to arguing that no contract existed. *See Jones*, 29 F.3d at 1553 ("If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous."). Further, whether a contract exists is not a fact that parties can stipulate or agree to; it is a matter of law for determination by a court. *See Munroe v. U.S. Food Serv.*, 985 So. 2d 654, 655 (Fla. Dist. Ct. App. 2008) ("[W]hether an agreement constitutes a valid contract is a matter of law subject to de novo review."). Accordingly, because "indisputability is a prerequisite" to "preclude [Gemini] from introducing contrary evidence and in effect, directing a verdict against [it] as to the fact noticed," I decline to judicially notice DLS's supposed "concession."[6] *See Jones*, 29 F.3d at 1553.

(3) **An "Additional Insured" under the Policy.**

An insurance agency's duty to defend is triggered "based on only the allegations of the underlying complaint. If the complaint sets forth facts which bring the claim within policy coverage, the duty to defend arises." *Keen v. Florida Sheriffs' Self-Insurance*, 962 So.2d 1021, 1024 (Fla. Dist. Ct. App. 2007). But if the pleadings "show the applicability of a policy exclusion, the insurer has no duty to defend." *Reliance Ins. Co. v. Royal Motorcar Corp.*, 534 So.2d 922, 923 (Fla. 4th DCA 1988). Thus, in light of the allegations in the Complaint, and considering the insurance Policy itself, Strauss must show that it would plausibly be covered by the Policy between DLS and Gemini for Gemini to be required to defend it.

Under the insurance Policy between DLS and Gemini, Gemini is obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property

---

[6] I note that the provision of the pleadings cited by Strauss actually alleges that DLS contracted with Strauss "to provide materials, labor, and equipment," (DE 10-2 ¶ 9). It does not allege anything about their contract to provide insurance.

damage' to which this insurance applies." (DE 1-4 at 9). However, the Policy also provides two Additional Insured endorsements: Form CG 10 07 04, entitled "Additional Insured—Owners, Lessors or Contractors —Scheduled Person or Organization" (*Id.* at 75) and Form CG 20 37 04, entitled "Additional Insured—Owners, Lessors or Contractors—Completed Operations." (*Id.* at 76). In relevant part, the two forms are identical in that they provide coverage for "[a]ny person or organization when [the named insured] ha[s] agreed in a *written and executed contract*, prior to an 'occurrence,' *that such person or organization be added as an additional insured on [the] policy*," so long as the claimed liability was "*caused, in whole or in part,*" by the actions, work, or omissions of the named insured. (*Id.*). Because the requirements to meet the definition are conjunctive, Strauss cannot—as a matter of law—be entitled to coverage in the Underlying Action if I find that *either* condition has not been met.

### (a) Written and Executed Contract.

In this instance, I am at least dubious that a written and enforceable contract between Strauss and DLS, in which the Parties agree in writing that Strauss would qualify as an "additional insured" under DLS's Policy, exists. Strauss attaches to its Complaint the contract between it and DLS (DE 1-3 at 145–148), which, in a diversity case, I construe in accordance with Florida law. *See State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). The attached contract provides that the agreement is between "Strauss Construction" and DLS. It further contains an "Article 7 — Indemnification" provision. Such a provision requires that:

> Customer [Strauss Construction] shall indemnify and hold harmless Contractor [DLS] from and against all liabilities, damages, losses and costs . . . . However, in regard to liability for damages to persons or property caused in whole or in part by any act or omission, or default of [DLS] arising from the contract or its performance, [Strauss Construction]'s monetary limit on the extent of the indemnification shall be $100,000.00 and shall not include claims of, or damages resulting from, gross negligence, or willful, wanton

> or intentional misconduct of [DLS]. . . . The indemnification obligation under this Contract shall not be limited in any way by any limitation on the amount or type of insurance.

(*Id.*). Notably, the Contract also provides under "Article 10—General Provisions" that the document is "the full Agreement between Customer and Contractor, regardless of any prior proposals or communications." (*Id.* at 148).

Strauss also submits, as part of its Complaint, a "Certificate of Liability Insurance." (*Id.* at 149). The Certificate represents that the insured is "DLS Prestressed Inc" and that Insurer A is "Gemini Insurance Company." (*Id.*). It also states that the Certificate holder is "Strauss Construction." (*Id.*). However, in bold letters at the top of the document, the certificate states:

> This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively amend, extend or alter the coverage afforded by the policies below. This certificate of insurance does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder.

(*Id.).* It continues, "Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies." (*Id.*). There is no part of the certificate that has been endorsed by Gemini Insurance.

The attached contract and certificate demonstrate that the first requirement to qualify as an "additional insured" has not been met. The underlying contract is between DLS and "Strauss Construction," an entity that is not the Plaintiff in this lawsuit. In Response, Strauss suggests that it was DLS that entered the name this way, and "it is evident that DLS understands, and always understood, Robert L. Strauss, P.A. to be doing business as Strauss Construction, as DLS has sued Robert L. Strauss, P.A. in its cross-claim." (DE 10 at 6–7). However, it is axiomatic that insurance contracts are construed according to their plain meaning. *See Taurus Holdings, Inc. v. U.S. Fid. &*

*Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005). *"*[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms." *Id.* (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So.2d 963, 965 (Fla. 5th DCA 1996)). The names of the parties to the contract appear clear on the face of the document and Plaintiff, Robert L. Strauss, P.A. is not listed.

But even were I to deem the name "Strauss Construction" ambiguous and accept parol evidence demonstrating that the Parties intended the contract customer to be Plaintiff, other parts of the contract remain unambiguous and preclude a finding that the Parties expressly contracted for DLS to add Strauss to DLS's insurance policy as an "additional insured." *See Emergency Associates of Tampa, P.A. v. Sassano,* 664 So. 2d 1000, 1002–03 (Fla. Dist. Ct. App. 1995) (Florida law permits parol evidence only in the face of a latent ambiguity, which is "where a contract fails to specify the rights and duties of the parties in certain situations and extrinsic evidence is necessary for the interpretation or a choice between two possible meaning.") (internal quotation omitted). Plaintiff does not point out, nor does an independent review of the contract demonstrate, a provision that affirmatively requires DLS to add Strauss as an additional insured under its policy with Gemini. Rather, Strauss argues that the Court should find such a provision because the "Article 7—Indemnification" language "mirrors" the additional insured language under the Policy. (*DE* 10 at 7). But "mirror" language that, upon a plain reading, requires *Strauss* to indemnify DLS outside certain exceptions, does not an insurance contract make. Finally, Strauss also appears to fall back on the Certificate of Liability Insurance as proof that a written contract between it and DLS exists. But the plain language of the certificate is abundantly clear: it confers *no rights upon the certificate holder*. (DE 1-3 at 149).

### (b)  Liability "Caused in Whole or in Part."

Even assuming, *arguendo*, that a written contract does exist between DLS and Strauss requiring DLS to add Strauss as an "additional insured" on its policy, coverage would still not be afforded to Strauss.  The policy only states that additional coverage will extend to a third party if that third party is sued for liability "caused in whole or in part" by the named insured. Although no liability has been assessed in the Underlying Action, as explained above, should Strauss be found liable for property damage, it would necessarily be as a result of its own negligence and not that of DLS's.

Federal has not sued Strauss for vicarious liability of DLS's negligence. Rather, it has sued Strauss for "liability as general contractor" (DE 1-3 at 23–24), alleging that it owed a "non-delegable duty to all foreseeably injured parties." (*Id.* ¶ 47). The Eleventh Circuit has weighed in on an insurance company's obligations when a policy provides for additional coverage in light of the precise "caused, in whole or in part" language. It has held that coverage would only extend to the damages that the named insured or its agents "completely or partially caused" and not to any damages resulting from "[the additional insured's] own negligence." *Cincinnati Specialty Underwriters Ins. Co. v. KNS Group*, LLC, No. 21-13628, 2022 WL 5238711, at *3 (11th Cir. Oct. 6, 2022).

In this instance, finding that coverage would not extend to Strauss also comports with the Florida Supreme Court's decision in *Garcia v. Federal Ins. Co*. In that case, the Florida Supreme Court distinguished between policy language that allows for coverage "because of" the acts of the named insured versus language that allows for coverage "with respect to acts or omissions of the named insured." 969 So.2d at 292. The court highlighted the importance of the "because of" language, explaining that it provides a "more circumscribed meaning . . . than merely being a

sequential link in the chain of events." *Id.* at 293 (quoting *Long Island Lighting Co. v. Hartford Accident & Indem. Co.*, 350 N.Y.S. 967, 972 (N.Y. Sup. Ct. 1973)). In *Garcia*, the Court specifically stated that "the presence of the words 'because of' . . . requires that an additional insured's liability be 'caused by' the acts or omissions of the named insured." *Id.* Accordingly, this narrowed coverage only to those instances where an additional insured is claiming coverage due to allegations of vicarious liability for the negligent acts of the named insured. *Id.* at 294.

The Policy here, like the one in *Garcia*, limits coverage to instances where an additional insured is being held vicariously liable for the acts or omissions of the named insured. DLS and Gemini's Policy contains language even more narrow than the policy language in *Garcia*; it jumps the "because of" hurdle and *directly* states that coverage only extends when the liability is "caused," "in whole or in part," by DLS's negligence. Thus, it would make sense to require a vicarious liability allegation against the additional insured. Such a finding also aligns with those of several other district courts in the Southern District of Florida when evaluating the exact same word choice. *See Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, No. 20-20442-CIV, 2020 WL 3317035, at *6–*8 (S.D. Fla. June 18, 2020) (collecting cases).[7]

---

[7] Neither Party cites the Fourth District Court of Appeal's ruing in *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So.3d 174, (Fla. 4th DCA 2015). Although worthwhile to address, I—like Judge Moreno in *Amerisure Insurance Company*—ultimately find it inapposite. There, the Fourth District Court of Appeal held that the phrase "caused, in whole or in part, by" the named insured should not "be construed so narrowly" as to limit policy coverage "solely to vicarious liability, but [rather] that coverage extends to situations in which liability is shared." *Id.* at 183. The *Mid-Continent Cas. Co.* court interpreted such language when determining if there was even a valid "insured contract," as defined by the insurance policy. However, not only did that court not address the *Garcia* holding, but the causal language was analyzed as meeting the definition of a valid insurance contract. Here, analysis of the causal language is a separate prerequisite to a determination of Gemini's coverage regardless of the contract between Strauss and DLS. Accordingly, although the distinction is a fine one, I find it sufficient enough to still reach the interpretation that other federal district courts, as well as the Eleventh Circuit, have reached.

Finally, Strauss's Response focuses on the fact that although it is not being sued for vicarious liability in the Underlying Action brought by Federal against Strauss and DLS, a "plain reading of the Underlying Action clearly denotes that Federal is looking to [Strauss] for the damages that resulted from the acts or omissions of DLS." (DE 10 at 8). Thus, according to Strauss, "although not a specific cause of action, the damages that may result to [Strauss] from the Underlying Action, will result in whole or in part, from the acts or omissions of DLS." (*Id.*).

I cannot and will not determine the issue of coverage based on Strauss's perception of the Underlying Action without any explicit support. The Florida Supreme Court has specifically held that a defendant cannot "be found liable under a theory of vicarious liability that was not specifically pled." *Goldschmidt v. Holman*, 571 So. 2d 422, 423 (Fla. 1990). Because Federal only pleads *direct* liability against Strauss, coverage under DLS's policy with Gemini cannot extend to cover it.

Accordingly, for all the above reasons, I find that Strauss has not pleaded a plausible claim of coverage, and I will deny its request to issue a declaratory judgment determining that "Gemini Insurance Company has a duty and obligation to provide coverage for the loss or damage caused by its insured DLS Prestressed, Inc., such loss or damage which may be attributable to Plaintiff, Robert L. Strauss, P.A., and whether such loss or damage must be paid to Plaintiff as a loss payee." (DE 1-2 at 9).

### C.  Leave to Amend

Although Plaintiff does seek leave to amend (DE 10 at 11), I will dismiss this case with prejudice and without leave to amend because I find that amendment would be futile.[8] "[A] motion for leave to amend may appropriately be denied . . . 'where amendment would be futile.'" *In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir. 2014) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)). With regard to Count I, no additional facts could change the plain and unambiguous terms of the contract between DLS and Strauss, in which no provision provides for DLS to add Strauss as an "additional insured." Further, Federal has not alleged a claim of vicarious liability against Strauss based on DLS's actions, and it would be an exercise in speculation to assume that Federal would amend its state court complaint to add such a claim in the time that the Court would set a deadline to file an amended complaint in this matter.

Regarding Count II, I likewise find that it would be futile to provide leave for amendment. Strauss has filed a claim for the "breach of the implied covenant of good faith and fair dealing." (DE 1-3 at 10). The Florida Supreme Court has held that such a claim is subsumed by the statutory bad-faith cause of action under Fla. Stat. § 624.155. *See QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 549 (Fla. 2012). In Response to the Motion to Dismiss, Strauss admits that it did not file a civil remedy notice, which is a condition precedent to the filing

---

[8] As an alternative basis for declining Plaintiff an opportunity to amend, Plaintiff's request is procedurally improper, and, on that basis alone, I need not consider it. "Filing a motion is the proper method to request leave to amend a complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (citing Fed. R. Civ. P. 7(b)(1)). In addition, a motion for leave to amend must attach or set forth the substance of the proposed amendment. *Id.* "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999)) (internal quotation marks omitted).

of a bad faith claim under § 624.155. (DE 10 at 9). Thus, even Strauss admits that this claim is premature and should be dismissed.

But *even if Strauss fulfilled this condition precedent*, Strauss could not state a claim for relief as a matter of law under Count II. Because I find that DLS's insurance Policy with Gemini does not afford coverage to Strauss as a matter of law, Strauss could never plausibly plead that Gemini acted in bad faith when Gemini failed to either defend Strauss in the Underlying Action or indemnify Strauss. Florida appellate courts are clear: when there is no coverage under an insurance contract, an insurance agency does not breach its statutory duty of good faith when it refuses to provide coverage. *See Hartford Ins. Co. v. Mainstream Const. Group, Inc.,* 864 So. 2d 1270, 1272 (Fla. Dist. Ct. App. 2004) ("If there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim. Similarly, if there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices."); *Maryland Cas. Co. v. Alicia Diagnostic, Inc.*, 961 So. 2d 1091, 1092 (Fla. 5th DCA 2007) ("[I]f there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices."). Strauss can never appropriately plead this claim because I find that Gemini acted in accordance with the Policy it had with DLS when it declined coverage of Strauss.

### III.   CONCLUSION

Accordingly, for all the reasons articulated above, it is hereby **ORDERED AND ADJUDGED** that:

(1) Defendant Gemini's Motion to Dismiss (DE 5) is **GRANTED**.

(2) The Complaint is dismissed **WITH PREJUDICE**.

(3) All pending motions **ARE DENIED** as moot.

(4)  The Clerk of Court **SHALL CLOSE** this case.

**SIGNED** in Chambers at West Palm Beach, Florida, this 25th day of July, 2024.

_____

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE


cc: Counsel of Record